No. 23-1369

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

### LOIS ANN GIBSON, ET AL.,

*Plaintiffs-Appellants*,

**v.**

### STATE OF MARYLAND, ET AL.,

*Defendants-Appellees.*

_____

On Appeal from the United States District Court for the District of Maryland
(Stephanie A. Gallagher, District Judge)

_____

### BRIEF OF APPELLEES

_____

ANTHONY G. BROWN
Attorney General of Maryland

WENDY L. SHIFF
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
wshiff@oag.state.md.us
(410) 576-6996
(410) 576-6955 (facsimile)

Counsel for Appellee Maryland
Office of the State Prosecutor

DANIEL M. KOBRIN
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
dkobrin@oag.state.md.us
(410) 576-6472
(410) 576-6955 (facsimile)

Counsel for Appellee State of
Maryland

August 30, 2023

*Additional Counsel for Appellees on the next page.*

PHILIP E. CULPEPPER
Supervising County Attorney
Anne Arundel County Office of Law
2660 Riva Road, 4th Floor
Annapolis, Maryland 21401
pculpepper@aacounty.org
(410) 727-5000

Counsel for Appellee Anne
Arundel County


DAVID M. WYAND
Rosenberg Martin Greenberg, LLP
25 South Charles Street, Ste 2115
Baltimore, Maryland 21201
dwyand@rosenbergmartin.com
(410) 727-6600
(410) 727-1115 (fascimile)

Counsel for Appellee Harford County


GARY W. KUC
Howard County Solicitor
ELIZABETH ADAMS
Senior Assistant County Solicitor
Howard County Office of Law
Court House Drive
Ellicott City, Maryland 21043
eladams@howardcountymd.gov
(410) 313-21000

Counsel for Appellee Howard County


KEVIN KARPINSKI
Karpinski, Cornbrooks & Karp, P.A.
120 East Baltimore Street, Ste 1850
Baltimore, Maryland 21202-1617
kevin@bkcklaw.com
(410) 222-7888
(410) 727-0861 (fascimile)

Counsel for Appellees Calvert
County, Carroll County, Washington
County, and Kent County Board of
Elections


EDWARD B. LATTNER
Deputy County Attorney
Montgomery County Attorney's
Office
101 Monroe Street, 3rd Floor
Rockville, Maryland 20850
Edward.Lattner@Montgomery
CountyMD.gov
(240) 777-6700

Counsel for Appellee Montgomery
County


GUY SAINT POL MAYDIEU
Associate County Attorney
Prince George's County Office of Law
Wayne K. Curry Administration Bldg.
1301 McCormick Drive, Ste. 4100
Largo, Maryland 20774
GSMaydieu@co.pg.md.us
(301) 952-5225
(301) 952-3071 (fascimile)

Counsel for Appellee Prince George's
County

# TABLE OF CONTENTS

Page

JURISDICTIONAL STATEMENT ...........................................................1

ISSUES PRESENTED FOR REVIEW ......................................................2

STATEMENT OF THE CASE ..................................................................3

    The Gibson Plaintiffs Challenge the Conduct of the 2020 Election ..............3

    Allegations in The Gibson Plaintiffs' Pleadings .............................7

    The District Court Dismisses the Action as to All Defendants ...................10

    The Gibson Plaintiffs Move to Alter or Amend the Dismissal Order
    Based on Newly Discovered Evidence ...............................12

SUMMARY OF ARGUMENT..................................................................14

ARGUMENT ...........................................................................................15

I.    REVIEW OF THE ORDER TO DISMISS IS *DE NOVO*; THE DISTRICT
    COURT'S DENIAL OF THE MOTION TO ALTER OR AMEND PROCEEDS
    UNDER AN ABUSE OF DISCRETION STANDARD. .............................15

II.    THE GIBSON PLAINTIFFS FAILED TO ESTABLISH ARTICLE III STANDING
    BY FAILING TO ALLEGE ANY HARM TO THEMSELVES, AS VOTERS,
    SUFFERED AS A RESULT OF THE ALLEGED CONSPIRACY. ............................16

III.    THE MOTION TO ALTER OR AMEND THE DISMISSAL PRESENTED NO
    EVIDENCE ABOUT THE PLAINTIFFS' STANDING AND CONCEDED THAT
    THE GIBSON PLAINTIFFS' CLAIM WAS A GENERALIZED GRIEVANCE. ............22

CONCLUSION ........................................................................................24

REQUEST FOR ORAL ARGUMENT ....................................................27

CERTIFICATE OF COMPLIANCE .......................................................27

TEXT OF PERTINENT PROVISIONS ...................................................28

# TABLE OF AUTHORITIES

Page

## Cases

*All. v. City of Racine,* No. 20-C-1487, 2021 WL 179166 (E.D. Wis. Jan. 19, 2021) .................................................................................................................21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................15

*Baker v. Carr*, 369 U.S. 186 (1962).......................................................... 15, 16, 18

*Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017)............................................ 15, 16

*Buscemi v. Bell*, 964 F.3d 252 (4th Cir. 2020)................................................. 17, 18

*DiCocco v. Garland*, 52 F.4th 588 (4th Cir. 2022).................................................15

*Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) ...............................................23

*Gill v. Whitford*, 138 S. Ct. 1916 (2018)....................................................... passim

*Iowa Voter All. v. Black Hawk County*, 515 F. Supp. 3d 980 (N.D. Iowa 2021)....21

*Lance v. Coffman*, 549 U.S. 437 (2007) ......................................................... passim

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................. 15, 17, 19

*Minnesota Voters All. v. City of Minneapolis*, No. CV 20-2049 (MJD/TNL), 2020 WL 6119937 (D. Minn. Oct. 16, 2020) .............................................................21

*O'Rourke v. Dominion Voting Sys. Inc.,* 552 F. Supp. 3d 1168 (D. Colo. 2021) ....21

*O'Rourke v. Dominion Voting Sys. Inc*., No. 20-CV-03747-NRN, 2021 WL 1662742 (D. Colo. Apr. 28, 2021).................................................................21

*Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396 (4th Cir. 1998) . 16, 22, 23

*Pennsylvania Voters All. v. Center County*, 496 F. Supp. 3d 861 (M.D. Penn. 2020) .................................................................................................................21

*Republican Party of N.C. v. Martin*, 980 F.2d 943 (4th Cir. 1992)........................10

*Reynolds v. Sims*, 377 U.S. 533 (1964)...................................................................17

*Robinson v. Wix Filtration Corp. LLC,* 599 F.3d 403 (4th Cir. 2010) ...................16

*Schlesinger v. Reservist Comm. to Stop the War*, 418 U.S. 208 (1974) .................17

*Texas Voters All. v. Dallas County,* 495 F. Supp. 3d 441 (E.D. Tex. 2020) ...........21

*United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199 (4th Cir. 2017).......23

*Weidman v. Exxon Mobil Corp.*, 776 F.3d 214 (4th Cir. 2015) ..............................10

## Constitutional Provisions

U.S. Const. Art. III, § 2 ...........................................................................................17

## Statutes

18 U.S.C. §§ 1961 – 1968 .....................................................................................1, 4

28 U.S.C. § 1291 ......................................................................................................2

28 U.S.C. § 1331 ......................................................................................................1

52 U.S.C. § 20701 ....................................................................................................4

## Rules

Fed. R. App. Pro. 30(a)(1) ......................................................................................2

Fed. R. Civ. Pro. 15(d) ............................................................................................6

Fed. R. Civ. Pro. 59(e) ......................................................................................2, 22

## Other Authorities

*2020 Electoral College Results*, United States National Archives and Records
    Administration, https://www.archives.gov/electoral-college/2020 (last accessed
    August 10, 2023)...................................................................................................3

No. 23-1369

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

## LOIS ANN GIBSON, ET AL.,

*Plaintiffs-Appellants*,

v.

## STATE OF MARYLAND, ET AL.,

*Defendants-Appellees*.

_____

On Appeal from the United States District Court for the District of Maryland
(Stephanie A. Gallagher, District Judge)

_____

## BRIEF OF APPELLEES

_____

## JURISDICTIONAL STATEMENT

In this civil action, Lois Gibson, Lewis T. Porter, and Charlton Scientific Educational and Engineering Foundation, Inc., (the Gibson plaintiffs) asserted a claim for injunctive and other relief under the Racketeer Influenced and Corrupt Organization Act (RICO), codified at 18 U.S.C. §§ 1961 – 1968.  The district court had jurisdiction under 28 U.S.C. § 1331.  On December 16, 2022, the district court

granted all outstanding motions to dismiss, dismissing the action as to all parties. (ECF 73.)[1]

On January 13, 2023, the Gibson plaintiffs moved to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). (J.A. 321.) The district court denied the motion on March 29, 2023 (J.A. 455) and the Gibson plaintiffs thereafter noted an appeal on April 1, 2023 (J.A. 456). This Court has jurisdiction under 28 U.S.C. § 1291 to review the final judgment of the district court.

## ISSUES PRESENTED FOR REVIEW

1.    Did the district court correctly dismiss the action as to all parties because, as it correctly ruled, the plaintiffs failed to establish Article III standing by failing to allege any harm to themselves, as voters, separate from the alleged harm to "all honest American citizens who have been deprived of their Constitutional freedom and right to a fair election in Maryland?"

2.    Did the district court correctly deny the plaintiffs' motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) when the motion presented no evidence about the plaintiffs' standing and, instead, asserted that the

---

[1] Pursuant to Federal Rule of Appellate Procedure 30(a)(1)(B)&(C), appellees requested of appellant's counsel that the district court's memorandum opinion and order dismissing the case be made part of the appendix for this appeal. They were not. Appellees therefore cite to the case record for reference to the relevant opinion and decision in question.

pleaded cause of action "giv[es] standing to sue to all Americans as victims of diverse acts?"

## STATEMENT OF THE CASE

### The Gibson Plaintiffs Challenge the Conduct of the 2020 Election

On November 3, 2020, Maryland held its general election for state and federal offices. Thirty-one days later, on December 4, 2020, the State certified the results of that general election, including those for electors of President and Vice President of the United States. The prevailing electors convened in Annapolis on December 14, 2020, to cast their votes in the electoral college. Those votes, however, were not certified by a joint session of Congress until 3:44 a.m. on January 7, 2021, "[d]ue to violent unrest in and around the Capitol." *2020 Electoral College Results*, United States National Archives and Records Administration, https://www.archives.gov/electoral-college/2020 (last accessed August 10, 2023).

Eighteen months later, on July 5, 2022, Lois Gibson, joined by two other named plaintiffs, filed a civil action against the Maryland State Board of Elections, Office of the State Prosecutor, 20 Maryland counties, Baltimore City, the Kent County Board of Elections, and the Center for Tech and Civic Life (a private, non-profit organization) challenging the conduct of the 2020 general election. (J.A. 20-21.) The complaint accused the state entities of conspiring with the non-profit

organization to commit fraud in connection with the 2020 general election (J.A. 22, J.A. 63-64, J.A. 77) by depositing fraudulent ballots into mail-in ballot drop boxes throughout the state (J.A. 25, J.A. 33, J.A. 36-38). The Gibson plaintiffs sought injunctive relief barring in perpetuity the destruction of all 2020 election records so that an investigation into the alleged election fraud could continue without obstruction.[2] (J.A. 44, J.A. 53, J.A. 57.) As its legal basis, as best as could be interpreted,[3] the complaint mentioned in passing allegations of fraud, conspiracies to violate civil liberties, and violations of due process (J.A. 77), but focused its efforts on arguing for a civil violation of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961 – 1968. (J.A. 22, J.A. 28, J.A. 48, J.A. 77.)

In addition to the injunctive relief requested in the complaint, the Gibson plaintiffs sought an immediate *ex parte* temporary restraining order enjoining the Board of Elections and counties from disposing of the records of the 2020 general election during the pendency of the litigation. (J.A. 26, J.A. 57.) The district court

---

[2] Federal law requires "[e]very officer of election" to "retain and preserve" records of a federal election for 22 months following the election. 52 U.S.C. § 20701. The 22-month retention period for the November 3, 2020, general election fell on September 3, 2022. The records were scheduled for disposal after that.

[3] As the district court noted, the Gibson plaintiffs did not "enumerate counts or identify specific violations of any statutory or regulatory provisions." (ECF 72 at 6-7.) The court therefore found as a preliminary matter that the amended complaint violated Federal Rule of Civil Procedure 8(a) by failing to provide "a short and plain statement of the claim" and "a demand for the relief sought." (ECF 72 at 7.)

denied the request the day after its filing, July 6, 2022, citing the Gibson plaintiffs' failure to "establish threshold requirements for such relief" and the impropriety of granting such relief *ex parte*. (J.A. 115). The Gibson plaintiffs renewed the request for a temporary restraining order one month later, on August 2, 2022. (J.A. 116.) The second request was likewise denied. (J.A. 131.)

The Gibson plaintiffs filed a third request for a temporary restraining order hours after the polls closed on the November 8, 2022, general election day. (J.A. 222.) The third injunctive request asked the district court to issue a nationwide order enjoining "any state agency from declaring a winner to any election, federal or state which is scheduled, to occur on or after, November 8, 2022, until such time as the election process verification, 'assumed to be in the demonstrated presence of a RICO fraud,' in any applicable State, is concluded." (J.A. 229). The request stemmed from perceived shortcomings with Maryland's voting system, combined with the Gibson plaintiffs' belief in an ongoing RICO conspiracy to commit election fraud. (J.A. 224-225). The Board of Elections filed an opposition to the request the next day (J.A. 247); and the court denied the request by memorandum opinion and order on November 16, 2022 (J.A. 262, J.A. 274).

Finally, the Gibson plaintiffs filed an amended complaint on August 20, 2022, to "include [a] specific allegation of vote fraud by systematic controls over the election process, both voting and counting, based upon . . . new evidence."

(J.A. 142.)   The amended complaint reiterated the same allegations of conspiratorial fraud as the original complaint (J.A. 144-146), supplemented by the submission of "expert" analysis purportedly proving the fraud's existence (J.A. 140-141, J.A. 163-165).   The amended complaint also added requests for declaratory judgment, the convening of a grand jury, and the "scrapp[ing]" of "fake and corrupted [electoral] systems . . . in use throughout the entire Country" (J.A. 173).[4]

In response to the amended complaint, the majority of defendants moved to dismiss the action for failure to state a claim and lack of subject matter jurisdiction. (ECF 14, 18, 21, 23, 25, 26, 29, 31, 34, 46, 48, 50, 52, 55, 57, 62, 63, 68, 71.)

---

[4] Among several violations of the local rules, the amended complaint violated Local Rule 6(c), which requires service of a copy of the amended pleading with "stricken material . . . lined through or enclosed in brackets and new material . . . underlined or set forth in bold face type."  No comparative document was ever transmitted.  This violation and the composition of the amended complaint made it difficult for the responding parties to parse whether the Gibson plaintiffs had intended for the filing to stand on its own as a replacement to the original pleading, or whether it stood as a supplement to the original complaint.  *See* Fed. R. Civ. Pro. 15(d) (permitting supplemental pleadings "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented")

Given the language of the amended complaint (J.A. 142 ("Therefore, plaintiffs amend their allegations to include this specific allegation of vote fraud by systematic controls over the election process . . .")) and its stated inclusion of evidence discovered after the filing of the original complaint, Appellees treated the filing as a supplement in the district court and continue to do so in this appeal.

**Allegations in The Gibson Plaintiffs' Pleadings**

The Gibson plaintiffs accused 21 Maryland counties and Baltimore City of receiving cash grants from the Center for Tech and Civic Life (CTCL) for the purpose of fraudulently impacting the results of the 2020 presidential election. (J.A. 28, J.A. 147.)  The counties allegedly accomplished this scheme by executing individual contracts with CTCL purporting to memorialize grants made from CTCL to the individual jurisdictions for "election aid."  (J.A. 32-33, J.A. 147.) The jurisdictions then used the money for allegedly fraudulent purposes, paying "ballot mules" to deposit fraudulent mail-in ballots into designated drop boxes around the state. (J.A. 33, J.A. 54, J.A. 147-148.)

In support of these allegations, the Gibson plaintiffs submitted an affidavit detailing the lead plaintiff, Lois Gibson's, personal observations of mail-in ballots being deposited into a drop box on election day in 2020.  (J.A. 181.)  The Gibson plaintiffs also submitted the affidavit of a former Maryland resident, detailing an alleged instance of identity theft (J.A. 186) in support of the assertion that fraudulent mail-in ballots were "generated" or "harvested" through identity theft (J.A. 39-40, J.A. 154).  Two separate documents alleged to be executed contracts between counties in Maryland and CTCL were submitted as proof of the conspiratorial relationship between those parties.  (J.A. 189.)  And the reproduction of a spreadsheet, purporting to be documentation of fraudulent payments matching

a CTCL grant (J.A. 195), was held up alongside a self-generated memorandum (J.A. 179) as proof that all money from CTCL was disbursed by all participating counties for allegedly fraudulent purposes (J.A. 34-35, J.A. 52-53, J.A. 69, J.A. 153). The Gibson plaintiffs further offered the opinion of an expert whose mathematical analysis purported to prove the existence of a nationwide voter fraud effort, of which the Maryland conspiracy was a part. (J.A. 141.)

The Gibson plaintiffs styled the entire scheme a "RICO enterprise," accusing CTCL and the 22 Maryland jurisdictions of engaging in a RICO conspiracy to commit election fraud. (J.A. 22-23, J.A. 48-49, 77.) CTCL was accused of committing tax fraud within the ambit of the conspiracy (J.A. 64, J.A. 148-49, J.A. 157, J.A. 159), but the purpose of the RICO conspiracy remained election fraud (J.A. 66).

The harm alleged from this RICO conspiracy was pleaded as immeasurable and diffuse. The pleadings named as the injured plaintiffs: (1) Lois Ann Gibson; (2) Lewis T. Porter (as Chairman of Maryland 20-20 Watch); (3) Charlton Scientific Educational and Engineering Foundation, Inc.; (4) "[a] committee of injured citizen/voters for themselves and all others similarly situated"; and (5) "[a]ll others similarly situated injured persons, in whatever state or County they reside." (J.A. 18, J.A. 136). The Gibson plaintiffs affirmatively pleaded that their suit was not filed on their behalf, alone, but that "this case [was] filed on behalf of

all honest American citizens who have been deprived of their Constitutional freedom and right to a fair election in Maryland, and elsewhere across America, for now and forever." (J.A. 62, J.A. 147.)

To that end, the pleadings characterized the suit as one about "on-going systematic failures of election integrity." (J.A. 31.) No one voter, party, candidate, or district was disadvantaged by the alleged RICO conspiracy. (J.A. 27) ("This case is not about Donald Trump or the 2020 election. Rather, it is about correcting the existing election system to ensure election integrity for all citizens in the future.") Instead, the alleged fraud "threaten[ed] the stability of the Republic, [and] threaten[ed] to destroy all hope of any fair election process for all time." (J.A. 76, J.A. 161.)

The Gibson plaintiffs therefore did not seek individualized relief for any single plaintiff. They instead sought injunctive relief "to restore election integrity going forward and ensure the continuation of the American dream, its freedoms for its citizens and the preservation of the value of a singular vote." (J.A. 32). The Gibson plaintiffs styled themselves as acting "as a *de facto* attorney general" (J.A. 45) and accordingly requested of the district court:

- A preliminary injunction preventing the destruction of election records from the 2020 presidential election beyond September 3, 2022. (J.A. 53, J.A. 57, J.A. 143, J.A. 166.)
- An order requiring Maryland to pay for all "remedial action" stemming from the suit, including attorneys' fees, costs of litigation,

9

and "all cures required to create a workable fraud free system." (J.A. 77, J.A. 162.)

- Equitable relief "scrapp[ing]" the "fake and corrupted [election] systems . . . in use throughout the entire Country" and replacing them "with equitable and truthful systems." (J.A. 173.)

- The convening of a grand jury and assessment of "criminal and civil penalties . . . commensurate with the magnitude of the wrongs committed." (J.A. 174.)

**The District Court Dismisses the Action as to All Defendants**

The district court granted all pending motions to dismiss, dismissing the case as to all defendants, on December 16, 2022. (ECF 73.) Setting aside any discussion of the substantive challenges to the pleadings,[5] the district court

---

[5] The Board of Elections, county-defendants, and Office of the State Prosecutor raised no less than seven legal bases for dismissal in the trial court:

1. The Gibson plaintiffs failed to allege facts sufficient to plead the requisite elements of a RICO claim. (ECF 72 at 7.)

2. The injunctive relief sought by the Gibson plaintiffs was not available to them in a RICO action. (ECF 72 at 7.)

3. Governmental entities cannot be found liable of a civil RICO violation because they lack the requisite intent. (ECF 72 at 7.)

4. The Gibson plaintiffs failed to allege any conduct by the majority of the 21 counties sued. (ECF 72 at 7.)

5. Maryland's counties, as governmental units, exercise no independent decision-making power over state and federal elections in Maryland. (ECF 72 at 7-8.)

6. One county was not properly served. (ECF 72 at 8.)

7. The Gibson plaintiffs lacked standing to assert their claim. (ECF 72 at 2.)

In reviewing the judgment of the district court, this Court may affirm the order of dismissal for any reason appearing on the record. *Weidman v. Exxon*

"beg[an] and end[ed] its analysis with Plaintiffs' standing." (ECF 72 at 8.)  It noted that election law cases require plaintiff-voters to "allege facts showing disadvantage to themselves as individuals" in order to maintain standing to sue. (ECF at 8-9.) (Quotation marks omitted.)  The Gibson plaintiffs failed to meet that requirement by omitting any allegation "that their ability to cast a vote in any election was burdened, or that their votes went uncounted or were afforded less weight." (ECF 72 at 9.)

At the heart of their pleadings, the Gibson plaintiffs seemed to allege that the Board of Elections, counties, and Office of the State Prosecutor failed to act in accordance with the laws governing the administration of elections.  (ECF 72 at 9.)  The district court reasoned, though, that any injury from such violation "would accrue to every citizen and would not be particularized to Plaintiffs."  (ECF 72 at 9.)  By failing to assert whether they even voted in the 2020 election, the Gibson plaintiffs alleged the possibility of election influence and disenfranchisement, but not injury-in-fact to themselves.  (ECF at 10.)  The district court therefore concluded that the Gibson plaintiffs "lack[ed] standing to bring their claims and this Court therefore lack[ed] subject matter jurisdiction."  (ECF 72 at 11).

---

*Mobil Corp.*, 776 F.3d 214, 220 (4th Cir. 2015) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

**The Gibson Plaintiffs Move to Alter or Amend the Dismissal Order Based on Newly Discovered Evidence**

In response to the dismissal of their case for lack of subject matter jurisdiction, the Gibson plaintiffs filed a 29-page motion under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment of dismissal because of newly discovered evidence. (J.A. 321). The motion argued that a new method of election fraud, by way of internet-enabled voting equipment, had tainted the conduct of the two most recent elections. (J.A. 335-37.) In support of that argument, the Gibson plaintiffs appended four exhibits to the motion.

Exhibit 1 purported to be the November 20, 2022, affidavit of an anonymous individual. (ECF 74-1.) The individual reported observing active Wi-Fi networks in and around a polling place in Frederick County, Maryland, during the November 8, 2022, general election. (ECF 74-1 at 1-2.) Exhibit 2 appeared to be the unsigned affidavit of an individual named Preston Smith. (ECF 74-2.) Mr. Smith reported observations of election materials he saw while temporarily working in a warehouse in Florida before and during the 2022 election. (ECF 74-2 at 1-2.) Exhibit 3 was the affidavit of an individual named Lisa Batsch-Smith. (ECF 74-3.) Ms. Batsch-Smith listed "process[es] of election malfeasance we have observed," without identifying who "we" were, or which election(s) were observed. (ECF 74-3 at 1.) Exhibit 4 was submitted as an analysis of campaign finance materials gleaned from the Federal Election Commission's public campaign finance

12

database. (ECF 74-4.)   It concluded that there exists "a programmatically determined system using an algorithm to seed donations and inject 'Dark Money' into the stream of campaign finance donations within the election process."  (ECF 74-4 at 7.)

On the issues of standing and subject matter jurisdiction, the Rule 59(e) motion offered no newly discovered evidence.  It proclaimed that, "[d]uring the period of time since the amended complaint was filed and served additional new material and relevant evidence has been obtained, affecting both the substance and standing of the very numerous plaintiffs and classes of plaintiffs." (J.A. 322).  But the motion provided no further insight into whether any of the Gibson plaintiffs voted in the 2020 election and how they, as individual voters, were harmed by the defendants' alleged conduct.   On the issue of standing, the Gibson plaintiffs offered only one assertion in their motion: "the mechanisms of the frauds encompass thousands of violations of at least two diverse types which impact the essence of America, *giving standing to sue to all Americans as victims of diverse acts*."  (J.A. 322.) (Emphasis added.)

Sixteen defendants filed responses in opposition to the Rule 59(e) motion. (J.A. 451.)  The district court thereafter denied the motion (J.A. 455) for its failure to address the Gibson plaintiffs' standing (J.A. 453).   As the district court reasoned, the "new evidence [did] not remedy their jurisdictional defect. Even

13

assuming without deciding that this evidence was not previously available, Plaintiffs again fail to allege a particularized harm sufficient to confer Article III standing." (J.A. 453.)

## SUMMARY OF ARGUMENT

The Gibson plaintiffs accused Maryland of conspiring to commit fraud in its own 2020 presidential election. They did not, however, plead any facts connecting the alleged conspiracy to a cognizable injury suffered by an individual voter, an identifiable group of voters, a candidate for any office, or, most importantly, any of the named plaintiffs in this case. There was no allegation that the conspiracy added votes to a candidate's margin of victory or benefited any of the political parties registered in the state. Likewise, there was no allegation that the conspiracy diluted the votes of certain voters located in a specific county or legislative district. The Gibson plaintiffs did not even allege that they themselves voted in 2020, or that their personal votes were somehow affected by the purported conspiratorial effort. Instead, plaintiffs pleaded generally that a conspiracy victimized "all honest American citizens who have been deprived of their Constitutional freedom and right to a fair election in Maryland, and elsewhere across America, for now and forever." (J.A. 62, J.A. 147.)

The district court therefore ruled correctly that the Gibson plaintiffs "lack[ed] standing to bring their claims and this Court therefore lack[ed] subject

matter jurisdiction." (ECF 72 at 11.) The pleadings omitted any mention of an "injury in fact," failing to show how the alleged conspiracy caused an "invasion of a legally protected interest" that "affect[ed] the plaintiff[s] in a personal and individual way." *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n. 1 (1992)). And while the Gibson plaintiffs pleaded harm to the nation generally (J.A. 76, J.A. 161), that type of harm "is precisely the kind of undifferentiated, generalized grievance about the conduct of government" that cannot support Article III standing. *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (citing *Baker v. Carr*, 369 U.S. 186, 207-08 (1962)).

The district court likewise properly denied the Rule 59(e) motion to alter or amend the judgment. The motion did not present any new evidence or argument on the basis for the dismissal. Just the opposite, the Rule 59(e) motion conceded the issue by asserting that the alleged fraud "[gave] standing to sue to all Americans as victims of diverse acts." (J.A. 322.)

## ARGUMENT

## I. REVIEW OF THE ORDER TO DISMISS IS *DE NOVO*; THE DISTRICT COURT'S DENIAL OF THE MOTION TO ALTER OR AMEND PROCEEDS UNDER AN ABUSE OF DISCRETION STANDARD.

An order to dismiss for lack of standing is reviewed de novo. *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017). Because the order to dismiss in this

case resulted from a facial challenge to the pleadings, this Court accepts all "well-pleaded" allegations in the pleadings as true. *DiCocco v. Garland*, 52 F.4th 588, 591 (4th Cir. 2022). "Well-pleaded" means legal conclusions disguised as factual allegations may be rejected. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And conclusory factual allegations lacking "sufficient factual matter to render them plausible on their face" may also be discounted. *Beck*, 848 F.3d at 270 (citation omitted).

The denial of a motion under Rule 59(e) to alter or amend a judgment is reviewed under an abuse of discretion standard. *Robinson v. Wix Filtration Corp. LLC,* 599 F.3d 403, 407 (4th Cir. 2010). An abuse of discretion occurs when a court fails to consider "relevant factors" or when it acts on "legal or factual misapprehensions" of those factors. *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quotation omitted).

## II.    THE GIBSON PLAINTIFFS FAILED TO ESTABLISH ARTICLE III STANDING BY FAILING TO ALLEGE ANY HARM TO THEMSELVES, AS VOTERS, SUFFERED AS A RESULT OF THE ALLEGED CONSPIRACY.

The district court correctly dismissed the action because plaintiffs failed to establish Article III standing by not "alleg[ing] facts showing disadvantage to themselves as individuals." *Gill*, 138 S. Ct. 1929 (quoting *Baker*, 369 U.S. at 206)). Where the Gibson plaintiffs were required to show "a personal stake in the outcome of the controversy," *Baker*, 369 U.S. at 204, they omitted any mention of

themselves as voters, failing to plead how the alleged RICO-style conspiracy impacted their rights to cast a vote or have it accurately counted. The order of the district court granting dismissal to all defendants should be affirmed.

Article III of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. Art. III, § 2. The maintenance of a case or controversy relies, among other things, on standing—a plaintiff's ability to plead a "personal stake in the outcome of the controversy." *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020) (quotation omitted). To establish standing, it is the plaintiff's burden to sufficiently plead "injury in fact, causation, and redressability." *Lance*, 549 U.S. at 439.

An "injury in fact" is an injury that is "concrete," "particularized," and "actual or imminent, not conjectural or hypothetical." *Bell*, 964 F.3d at 258-59 (quoting *Lujan*, 504 U.S. at 560)). Plaintiffs must identify a harm, an "invasion of a legally protected interest," and adequately identify how that harm affects them "in a personal and individual way." *Gill*, 138 S. Ct. at 1929 (quoting *Lujan*, 504 U.S. at 560 & n. 1)). Asserting the violation of an interest "which is held in common by all members of the public" fails as a matter of law to establish Article III standing. *Schlesinger v. Reservist Comm. to Stop the War*, 418 U.S. 208, 220 (1974).

In election and voting rights challenges, a plaintiff's standing is naturally entwined with their "individual and personal" right to vote. *Gill*, 138 S. Ct. at 1929 (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)). "'[V]oters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage." *Id.* (quoting *Baker*, 369 U.S. at 206)). In contrast, voters who fail to plead any personal disadvantage or impairment of the ability to vote cannot maintain Article III standing. *See, e.g.*, *Bell*, 964 F.3d at 260 (holding that North Carolina voter challenging state write-in vote restrictions failed to establish standing by failing to allege how restrictions impaired his personal ability to cast a write-in vote).

In *Lance v. Coffman*, the Supreme Court of the United States rejected an effort by four Colorado voters to bring an election challenge without alleging personal disadvantage or impairment. 549 U.S. at 442. The plaintiff-voters in *Lance* challenged Colorado's use of a judicially drawn districting map. 549 U.S. at 438. The voters claimed that an interpretation of the Colorado Constitution permitting the use of a judicially drawn map, over a map drawn by the state legislature, violated "their rights under the Elections Clause [of the United States Constitution]." *Id.* That claim was the only one forwarded by the four voters; no other injury was alleged. *Id.* at 442.

The Supreme Court declined to reach the merits of the challenge, holding instead that the voters lacked standing to maintain the suit in federal court. *Id.* The "problem with [the voters'] allegation," reasoned the Court, was that they alleged only "that the law—specifically the Elections Clause—ha[d] not been followed." *Id.* But "raising only a generally available grievance about the government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large" could not support the necessary standing to maintain the case. *Id.* at 439 (quoting *Lujan*, 504 U.S. at 573-74). The Court therefore concluded that the voters had "assert[ed] no particularized stake in the litigation" and held accordingly that they lacked standing. *Id* at 442.

The Gibson plaintiffs likewise have failed to assert a particularized stake in their litigation. While their pleadings dwell extensively on the scope of the harm they allege, those pleadings omit any explanation of how that harm injured them as voters. The Gibson plaintiffs do not even allege that they voted in the 2020 election, or that their abstention from the 2020 election resulted from the activities they perceived.[6] Lois Gibson is mentioned only as a witness to the alleged fraud.

---

[6] The original complaint mentions twice in passing that Lois Gibson had been attempting to deposit her ballot for the 2020 presidential election in a ballot drop box when she observed an instance of perceived ballot-stuffing. (J.A. 37-38,

(J.A. 30, J.A. 36, J.A. 37-38, J.A. 66, J.A. 139, J.A. 151). Lewis Porter is mentioned only as a reporter of criminal activity (J.A. 150); and Charlton Scientific Educational and Engineering Foundation, Inc. is not mentioned at all. The Gibson plaintiffs could not allege an electoral "disadvantage to themselves as individuals," *Gill*, 138 S. Ct. at 1929 (quotation omitted), without first alleging that they could be disadvantaged in the first place, by casting a vote.

Instead, the Gibson plaintiffs asserted that the alleged conspiracy harmed "all honest American citizens." (J.A. 62, J.A. 147.) Rather than personal redress, they sought generally "to restore election integrity going forward." (J.A. 32.) By acting "as a *de facto* attorney general" (J.A. 45) the Gibson plaintiffs expressly aimed to enforce collective voting rights on behalf of the voting public. (J.A. 173-74) (seeking as relief the replacement of the current election system in the United States "with equitable and truthful systems"; and the convening of a grand jury to begin the prosecutorial effort to punish those responsible for the perceived fraud).[7] But these claims of harm "to every citizen's interests" are "precisely the kind of

---

J.A. 66.) However, the complaint cites to Ms. Gibson's declaration as its basis for that assertion (J.A. 38), and the declaration contradicts the assertion (J.A. 181). According to Ms. Gibson's signed affidavit, she was returning training materials from her election judge training to the Frederick County Board of Elections when she made her observations. (J.A. 181.) She was not voting.

[7] The latter request was a legal impossibility. "[A] citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *United States v. Texas*, 143 S. Ct. 1964, 1970 (2023) (quotation omitted).

undifferentiated, generalized grievance about the conduct of government" that have been consistently rejected in the past. *Lance*, 549 U.S. at 439, 442 (quotation omitted). The Gibson plaintiffs could not grant themselves standing by pleading harm to all American citizens.

Federal courts around the country have dismissed similar lawsuits alleging election fraud conspiracies involving the Center for Tech and Civic Life because the plaintiffs lacked standing. Like the Gibson plaintiffs here, those plaintiffs failed to allege particularized injury to themselves. *See Iowa Voter All. v. Black Hawk County*, 515 F. Supp. 3d 980 (N.D. Iowa 2021) (plaintiffs lacked standing to pursue claims of generalized harm suffered by all voters and caused by, among others, the Center for Tech and Civic Life); *see also Pennsylvania Voters All. v. Center County*, 496 F. Supp. 3d 861 (M.D. Penn. 2020), appeal dismissed for lack of standing, 2020 WL 9260183 (3d. Cir. Nov. 23, 2020) (same); *Texas Voters All. v. Dallas County,* 495 F. Supp. 3d 441 (E.D. Tex. 2020) (same); *O'Rourke v. Dominion Voting Sys. Inc*., No. 20-CV-03747-NRN, 2021 WL 1662742 (D. Colo. Apr. 28, 2021), *aff'd*, No. 21-1161, 2022 WL 1699425 (10th Cir. May 27, 2022) (same); *All. v. City of Racine,* No. 20-C-1487, 2021 WL 179166 (E.D. Wis. Jan. 19, 2021) (same); *Minnesota Voters All. v. City of Minneapolis*, No. CV 20-2049 (MJD/TNL), 2020 WL 6119937 (D. Minn. Oct. 16, 2020) (same). The United States District Court for the District of Colorado even issued sanctions against the

plaintiffs' counsel in *O'Rourke* because "there was no good faith basis for believing or asserting that Plaintiffs had standing to bring the claims they did." *O'Rourke v. Dominion Voting Sys. Inc.,* 552 F. Supp. 3d 1168, 1199 (D. Colo. 2021), modified in part on reconsideration, No. 20-CV-03747-NRN, 2021 WL 5548129 (D. Colo. Oct. 5, 2021), and appeal dismissed, No. 21-1394, 2021 WL 8317149 (10th Cir. Dec. 23, 2021).

The district court was therefore correct in ruling that the Gibson plaintiffs "lack[ed] standing to bring their claims and this Court therefore lacks subject matter jurisdiction." (ECF 72 at 11.) The resultant order to dismiss the case as to all plaintiffs should be affirmed.

## III. THE MOTION TO ALTER OR AMEND THE DISMISSAL PRESENTED NO EVIDENCE ABOUT THE PLAINTIFFS' STANDING AND CONCEDED THAT THE GIBSON PLAINTIFFS' CLAIM WAS A GENERALIZED GRIEVANCE.

The district court properly denied the Gibson plaintiffs' motion to alter or amend the judgment dismissing the action under Federal Rule of Civil Procedure 59(e) because the motion failed entirely to address the district court's ruling. Rule 59(e) permits a court to reconsider a final judgment so long as a motion "to alter or amend" that judgment is filed within 28 days of its entry. The grant of a motion to alter or amend is an "extraordinary remedy which should be used sparingly," *Pacific Ins. Co.*, 148 F.3d at 403. Alteration or amendment of a final judgment

under Rule 59(e) permits a district court to "correct its own errors" obviating the need for "unnecessary appellate proceedings." *Id*. at 403.

A Rule 59(e) motion may only be granted under one of three circumstances: "(1) to accommodate an intervening change in the controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 210 (4th Cir. 2017). When relying on newly discovered evidence, the moving party bears the burden of producing "legitimate justification for not presenting the evidence during the earlier proceeding." *Pacific Ins. Co*., 148 F.3d at 403 (quotation omitted). A movant cannot prevail by "rais[ing] arguments or present[ing] evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n. 5 (2008).

The final judgment below—dismissal—resulted from a failure to sufficiently plead standing. (ECF 72 at 11.) Accordingly, the Gibson plaintiffs bore the burden of demonstrating a novel viable theory of standing, factually or legally, in order to prevail on the Rule 59(e) motion. And while the motion offered argument and four exhibits on the existence of an alleged newly-discovered scheme of election fraud (J.A. 321), it offered nothing on the issues of standing and subject matter jurisdiction. None of the exhibits spoke to the plaintiffs' voting activities during the 2020 presidential election. And nothing in the motion offered how the

23

perceived fraud, previously pleaded or newly discovered, affected any of the individual plaintiffs named in the case. The motion failed to provide any justification for amending or altering the ruling rendered by the district court.

Instead, the motion conceded the issue entirely. The Gibson plaintiffs argued in the motion that they possessed standing to challenge the 2020 election because the nature of the alleged fraud granted standing to all Americans: "a diverse group of citizens have come together to join the original plaintiffs and discovered that the mechanisms of the frauds encompass thousands of violations of at least two diverse types which impact the essence of America, giving standing to sue to all Americans as victims of diverse acts." (J.A. 322.) There was no concrete or particularized injury alleged in this suit, only purported injury that inured to all Americans equally.

The Gibson plaintiffs failed to carry their burden to alter or amend the district court's dismissal order. They submitted no evidence relevant to the district court's ruling, provided no legal basis for revisiting the dismissal order, and confirmed that they lacked Article III standing. The district court properly exercised its discretion in declining to alter or amend the judgment.

## CONCLUSION

The judgment of the United States District Court for the District of Maryland should be affirmed.

24

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/

_____

| | |
|---|---|
| WENDY L. SHIFF | DANIEL M. KOBRIN |
| Assistant Attorney General | Assistant Attorney General |
| 200 Saint Paul Place, 20th Floor | 200 Saint Paul Place, 20th Floor |
| Baltimore, Maryland 21202 | Baltimore, Maryland 21202 |
| wshiff@oag.state.md.us | dkobrin@oag.state.md.us |
| (410) 576-6996 | (410) 576-6472 |
| (410) 576-6955 (facsimile) | (410) 576-6955 (facsimile) |

Counsel for Appellee Maryland Office of the State Prosecutor

Counsel for Appellee State of Maryland

PHILIP E. CULPEPPER
Supervising County Attorney
Anne Arundel County Office of Law
2660 Riva Road, 4th Floor
Annapolis, Maryland 21401
pculpepper@aacounty.org
(410) 727-5000

KEVIN KARPINSKI
Karpinski, Cornbrooks & Karp, P.A.
120 East Baltimore Street, Ste 1850
Baltimore, Maryland 21202-1617
kevin@bkcklaw.com
(410) 222-7888
(410) 727-0861 (fascimile)

Counsel for Appellee Anne Arundel County

Counsel for Appellees Calvert County, Carroll County, Washington County, and Kent County Board of Elections

*Additional Counsel for Appellees on the next page*

25

DAVID M. WYAND
Rosenberg Martin Greenberg, LLP
25 South Charles Street, Ste 2115
Baltimore, Maryland 21201
dwyand@rosenbergmartin.com
(410) 727-6600
(410) 727-1115 (fascimile)

Counsel for Appellee Harford County

EDWARD B. LATTNER
Deputy County Attorney
Montgomery County Attorney's
Office
101 Monroe Street, 3rd Floor
Rockville, Maryland 20850
Edward.Lattner@Montgomery
CountyMD.gov
(240) 777-6700

Counsel for Appellee Montgomery
County

GARY W. KUC
Howard County Solicitor
ELIZABETH ADAMS
Senior Assistant County Solicitor
Howard County Office of Law
Court House Drive
Ellicott City, Maryland 21043
eladams@howardcountymd.gov
(410) 313-21000

Counsel for Appellee Howard County

GUY SAINT POL MAYDIEU
Associate County Attorney
Prince George's County Office of Law
Wayne K. Curry Administration Bldg.
1301 McCormick Drive, Ste. 4100
Largo, Maryland 20774
GSMaydieu@co.pg.md.us
(301) 952-5225
(301) 952-3071 (fascimile)

Counsel for Appellee Prince George's
County

## REQUEST FOR ORAL ARGUMENT

The Appellees do not request that the Court hear oral argument in this appeal.

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 5,746 words, excluding the parts of the brief exempted by Rule 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Fourteen point, Times New Roman.

/s/ Daniel M. Kobrin

_____

Daniel M. Kobrin

# TEXT OF PERTINENT PROVISIONS

**Federal Rules of Civil Procedure**

**Rule 59. New Trial; Altering or Amending a Judgment.**

(a) In General.

(1) *Grounds for New Trial.* The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:

(A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or

(B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

(2) *Further Action After a Nonjury Trial.* After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

(b) Time to File a Motion for a New Trial. A motion for a new trial must be filed no later than 28 days after the entry of judgment.

(c) Time to Serve Affidavits. When a motion for a new trial is based on affidavits, they must be filed with the motion. The opposing party has 14 days after being served to file opposing affidavits. The court may permit reply affidavits.

(d) New Trial on the Court's Initiative or for Reasons Not in the Motion. No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.

(e) Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

|  |  |  |
|---|---|---|
| | * | |
| LOIS ANN GIBSON, ET AL., | | |
| | * | |
| *Plaintiff-Appellant*, | | |
| v. | * | No. 23-1369 |
| | | |
| STATE OF MARYLAND, ET AL., | * | |
| | | |
| *Defendant-Appellee*. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## CERTIFICATE OF SERVICE

I certify that, on this 30th day of August, 2023, the Brief of Appellee was filed electronically and served on:

> Walter T. Charlton, Esq.
> 213 Morgan Street
> Washington, District of Columbia 20001
> charltonwt@comcast.net

/s/ Daniel M. Kobrin

_____

Daniel M. Kobrin